**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 1:25-cv-02437-RMR-STV

PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,

Plaintiff,

v.

PHILIP WEISER, in his official capacity as Attorney General of the State of Colorado; and KRISTEN WOLF, RYAN LEYLAND, PATRICIA EVACKO, AVANI SONI, MICHAEL SCRUGGS, ALEXANDRA ZUCCARELLI, and JAYANT PATEL, in their official capacities as Members of the Colorado State Board of Pharmacy,

Defendants.

---

**ORDER**

---

The Colorado 340B Contract Pharmacy Protection Act, or Senate Bill 25-071 (“SB25-71”), was enacted in 2025 with the purpose of regulating the ability of drug manufacturers to restrict access to discounted drugs. Plaintiff Pharmaceutical Research and Manufacturers of America (“PhRMA”) claims SB25-71 conflicts with the federal scheme that regulates Section 340B discounted drugs and, thus, is preempted by federal law. Defendants collectively filed the instant Motion to Dismiss, ECF No. 41, seeking dismissal of Plaintiff’s Complaint for lack of subject-matter jurisdiction under Fed. R. Civ.

P. 12(b)(1) and 12(b)(6).[1] Magistrate Judge Varholak recommends the Court grant the Motion to Dismiss and dismiss the Complaint without prejudice. ECF No. 72.[2] For the reasons stated below, the Court accepts and adopts the Recommendation on alternative grounds.

## I. BACKGROUND

### A. Section 340B

Section 340B is a federal program that requires drug companies participating in Medicaid and Medicare Part B to offer discounts on certain outpatient drugs to "covered entities," including public hospitals, community health centers, and other entities providing care for low-income and rural patients. 42 U.S.C. §§ 256b; *Sanofi Aventis U.S. LLC v. United States Dep't of Health & Hum. Servs.*, 58 F.4th 696, 699 (3d Cir. 2023). These drug manufacturers must follow certain 340B program requirements, including "sell[ing] outpatient drugs to covered entities at or below the statutorily determined price." Gov't Accountability Off., *Drug Pricing: Manufacturer Discounts in the 340B Program Offer Benefits, but Federal Oversight Needs Improvement* 13 (GAO-11-836, Sept. 2011).

Manufacturers enter into standard agreements with the Secretary of Health and Human Services ("Secretary") to set the price for covered outpatient drugs purchased by covered entities. 42 U.S.C. § 256b(a)(1). The Secretary may initiate audits to ensure covered entities do not engage in diversion or accept duplicated discounts *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 456 (D.C. Cir. 2024). However, the Secretary

---

[1] PhRMA filed a response to the Motion to Dismiss, ECF No. 52, and Defendants replied, ECF No. 56.
[2] PhRMA filed an objection to the Recommendation, ECF No. 76, and Defendants filed a response, ECF No. 78.

lacks rulemaking authority over Section 340B. *Id.* The Health Resources and Services Administration ("HRSA") issues guidance documents for interpreting and implementing the Section 340B program. *Id.* HRSA's guidance on whether a covered entity may use a "purchasing agent" or outside pharmacy has shifted over the years. *Id.* at 456-57. Most recently, HRSA issued guidance in 2010 stating that covered entities may contract with an unlimited number of outside pharmacies, regardless of whether the entities have in-house pharmacies. *Id.* at 457 (Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services, 75 Fed. Reg. 10,272, 10,272–73 (Mar. 5, 2010)).

**B. Colorado's Act SB25-71**

Covered entities rely on the use of contract pharmacies to take full advantage of Section 340B. ECF No. 33 at 5. As covered entities have increased their use of contract pharmacies, pharmaceutical companies have responded by imposing restrictions on covered entities contracting with outside pharmacies. *Id.* In response, states have enacted gap-filling state laws to ensure that covered entities in their states can still access Section 340B's financial resources. *Id.* at 6. In 2025, the Colorado General Assembly enacted SB25-71, which states "a manufacturer, third-party logistics provider, or repackager . . . shall not, directly or indirectly, deny, restrict, prohibit, discriminate against, or otherwise limit the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B covered entity, a pharmacy contracted with a 340B covered entity, or a location otherwise authorized by a 340B covered entity to receive and dispense 340B drugs." Colo. Rev. Stat. § 6-29-105(1)(a). SB25-71 also states "a manufacturer shall not directly or indirectly require, including as a condition, a 340B covered entity, a pharmacy contracted with a

340B covered entity, or any other location authorized to receive 340B drugs by a 340B covered entity to submit any health information, claims or utilization data . . . or other data that does not relate to a claim submitted to federal health care program, unless such data is voluntarily furnished by such covered entity or otherwise required to be furnished under applicable federal law. Colo. Rev. Stat. § 6-29-105(1)(b). A violation of SB25-71 is an unfair or deceptive trade practice under the Colorado Consumer Protection Act ("CCPA"), and the violator is subject to the CCPA's enforcement and penalty provisions. § 6-29-105(3)(a).

### C. Related Cases and Court Decisions

PhRMA and other drug manufacturers have filed lawsuits across the country challenging state laws addressing the issue of affordability and access to prescription drugs.[3] In this District alone, AbbVie and AstraZeneca have also challenged Colorado's

---

[3] In its Order denying PhRMA's request for preliminary injunction, ECF No. 65, the Court noted the following cases: *AbbVie, Inc., et al. v. Skrmetti*, No. 25-cv-00519, 2026 WL 542712 (M.D. Tenn. Feb. 26, 2026) (granting motion to dismiss); *AstraZeneca Pharmaceuticals LP v. Lopez*, No. 25-cv-00369 (D. Haw. Feb. 23, 2026) (denying motion for preliminary injunction); *AbbVie, Inc., et al. v. Brown*, Nos. 25-cv-0071, 25-cv-00284, 25-cv-00308, 2025 WL 3228898 (D. Utah Nov. 19, 2025) (granting in part motion to dismiss Due Process and Commerce Clause claims and denying in part motion to dismiss with respect to Supremacy Clause and Takings claims); *AbbVie Inc. et al. v. Drummond*, Case Nos. Civ-25-726, Civ-25-727, Civ-25-1156 (W.D. Okla. Oct. 31, 2025) (granting in part and denying in part preliminary injunction); *AbbVie Inc. v. Neronha*, 1:25-cv-00388-JJM-AEM (D.R.I. Sept. 30, 2025) (denying preliminary injunction as to Rhode Island law); AbbVie, Inc. v. Frey, 2025 WL 2813787, at *1 (D. Me. Sept. 23, 2024) (same as to Maine law); *AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657, 664–65 (W.D. Miss. 2024) (same as to Mississippi law); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 749–50 (S.D. Miss. 2024) (same); *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271, at *18 (M.D. Tenn. June 30, 2025) (same as to Tennessee law); *AstraZeneca Pharms. LP v. Bailey*, 2025 WL 644285, at *3 (W.D. Mo. Feb. 27, 2025) (granting motion to dismiss manufacturer's claims that Missouri law was preempted and violated the Takings Clause); *PhRMA v. Murrill*, 2024 WL 4361597, at *8–9 (W.D. La. Sept. 30, 2024) (granting summary judgment in favor of State on manufacturers' claims that Louisiana law was preempted and violated the Takings Clause); *AbbVie Inc. v. Fitch,* 2024 WL 3503965, at *12 (S.D. Miss. July 22, 2024) (denying preliminary injunction as to Mississippi law), *aff'd* 152 F.4th 635 (5th Cir. 2025); *PhRMA v. Fitch,* 2024 WL 3277365, at *11 (S.D. Miss. July 1, 2024) (same); *PhRMA v. McClain,* 645 F. Supp. 3d 890 (E.D. Ark. 2022) (granting summary judgment in favor of Arkansas official on manufacturers' claim that Arkansas law was preempted), *aff'd* 95 F.4th 1136 (8th Cir. 2024), *cert. denied* 145 S.Ct. 768 (2024); *but see AstraZeneca Pharms. LP v. Harris,*

law in *AbbVie Inc. v. Weiser, et al.*, Case No. 25-cv-01847-WJM-KAS, filed June 12, 2025, and *AstraZeneca Pharmaceuticals LP v. Weiser, et al.*, Case No. 25-cv-02685-PAB, filed August 27, 2025. In each of these cases, the drug manufacturer's motion for preliminary injunction was denied. *See Pharm. Rsch. & Manufacturers of Am. v. Weiser*, No. 1:25-CV-02437-RMR-STV, 2026 WL 763970 (D. Colo. Mar. 18, 2026); *AbbVie, Inc. v. Weiser*, 811 F. Supp. 3d 1264 (D. Colo. 2025); *Astrazeneca Pharms. LP v. Weiser*, No. 25-CV-02685-PAB-STV, 2025 WL 3653161 (D. Colo. Dec. 17, 2025). And in each case, the plaintiff appealed the Court's decision. *PhRMA*, Case No. 25-cv-02437-RMR-STV, ECF No. 66; *AbbVie*, Case No. 25-cv-01847-WJM-KAS, ECF No. 123; *AstraZeneca*, Case No. 25-cv-02685-PAB, ECF No. 73.

### D. Motion to Dismiss

PhRMA asserts two claims: (1) declaratory/injunctive relief on the basis of preemption under the Supremacy Clause and the Federal 340B statute; and (2) declaratory/injunctive relief based on unconstitutional extraterritorial regulation. ECF No. 1 at 42-56. Defendants contend that PhRMA's complaint should be dismissed, because (1) PhRMA has not established standing and, thus, the Court lacks subject matter jurisdiction over its claims; (2) PhRMA has failed to state a plausible preemption claim; and (3) PhRMA has also failed to allege a plausible extraterritoriality claim. ECF No. 41. In his Recommendation, Magistrate Judge Varholak states that the Court lacks Article III

---

No. 4:24-cv-00268-KGB (E.D. Ark. Sept. 30, 2025), ECF No. 141 (denying judgment on the pleadings as to manufacturer's claim that Arkansas law violated Takings Clause); *PhRMA v. Morrisey,* 760 F. Supp. 3d 439, 452–60 (S.D.W. Va. 2024) (granting preliminary injunction as to West Virginia law and denying the defendants' motion to dismiss).

standing to review PhRMA's claims and does not address Defendants' second or third argument. ECF No. 72 at 6.

## II. LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## III. ANALYSIS

Defendants moved to dismiss this case under Fed. R. Civ. P. 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. ECF No. 41. Magistrate Judge Varholak recommends the Court grant Defendants' Motion to Dismiss, and PhRMA objects to the Recommendation. The Court first analyzes Defendants standing arguments, as it cannot proceed to the merits of the claims if PhRMA lacks standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be

established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.").

**A. Subject-Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1)**

It is well-established that federal courts are courts of limited jurisdiction and that plaintiffs must have standing before a federal court can reach the merits of a case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). To have standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *Lujan*, 504 U.S. at 560-61).

An organization can satisfy the standing requirements of Article III by claiming organizational standing, that "it suffered an injury in its own right," or asserting associational standing "as the representative of its members." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (citations omitted). To invoke associational standing, the "organization must demonstrate that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (citation omitted). In this case, PhRMA appears to assert associational standing. ECF No. 72 at 7.

Magistrate Judge Varholak recommends the Court find that PhRMA has not alleged sufficient facts to satisfy the first element of associational standing—that at least one of its members would otherwise have standing to sue in their own right. Magistrate Judge Varholak explains that PhRMA's complaint fails to "allege member-specific facts demonstrating that any particular manufacturer faces an imminent injury traceable to [SB25-71]." ECF No. 72 at 8.

PhRMA argues that it has associational standing, because SB25-71 "injures PhRMA's members because it forbids them from engaging in conduct in which they would otherwise engage." ECF No. 76 at 10. PhRMA points to the fact that "[b]efore [SB25-71] was enacted, many PhRMA members individually engaged in conduct that state law now proscribes—namely, limiting the number of contract pharmacies used by covered entities and requiring the provision of claims data as conditions precedent of sales at 340B prices." ECF No. 76 at 10 (citing ECF No. 1 ¶¶ 84-85). In its complaint, PhRMA stated that its members, "which manufacture and sell pharmaceutical products, participate in the federal 340B program and will thus be forced to supply their drugs at a steeply reduced price under [SB25-71] or otherwise face significant monetary penalties." ECF No. 1 ¶ 22. According to PhRMA, SB25-71 "forces manufacturers to provide the 340B price on drugs that have not been lawfully ordered as part of the federal 340B program" and "seeks to compel drug manufacturers to make *340B-priced sales* in situations and under circumstances that federal law does not require." *Id.* ¶ 145 (emphasis original).

Recently, Judge Brimmer found AstraZeneca had standing to bring its action against the same Defendants. *Astrazeneca Pharms. LP v. Weiser*, No. 25-CV-02685-

PAB-STV, ECF No. 87 at 11-12 (D. Colo. Aug. 31, 2026). In its amended complaint, AstraZeneca projected that SB25-71 would increase the cost of participation in Section 340 and result in it losing approximately $600,000 per month. *Id.* at 11. Judge Brimmer reasoned that, while AstraZeneca's estimated losses may ultimately stem from its participation in Section 340B, it was "incentivized to participate in Section 340B because otherwise it cannot participate in Medicaid and Medicare Part B." *Id.* Thus, he concluded that making AstraZeneca's participation in Section 340B more costly was a concrete and particularized injury that was fairly traceable to SB25-71 and, thus, AstraZeneca had standing. *Id.* at 11-12.

Judge Martinez came to the same conclusion and determined that AbbVie, too, had standing to bring its claims against these same Defendants. *Abbvie, Inc. v. Weiser*, No. 25-CV-1847-WJM-KAS, 2026 WL 1678085, at *2-*4 (D. Colo. June 10, 2026). In that case, Defendants did not contest that AbbVie met the injury-in-fact requirement for standing. *Id.* at *3. The dispute was whether the alleged economy injury was fairly traceable to SB25-71. *Id.* Judge Martinez determined that AbbVie's estimations that "complying with similar state laws in Mississippi and Missouri last year cost AbbVie around $33.1 million and $35 million, respectively" and expectation that Colorado's law would similar "cost AbbVie tens of millions of dollars per year (if not more)" were sufficient to establish a concrete and particularized economic injury that is fairly traceable to SB25-71. *Id.*

Here, PhRMA has not estimated dollar amounts of its economic losses. Instead, PhRMA has generally alleged economic injury by asserting that SB25-71 forces its

manufacturer members to supply their drugs at a steeply reduced price or otherwise face significant monetary penalties. Like AstraZeneca and AbbVie, PhRMA's members are incentivized to participate in Section 340B, and their economic losses are indeed concrete and particularized injuries fairly traceable to SB25-71. Indeed, this Court previously determined that the economic injury alleged by PhRMA was "sufficiently concrete and particularized and fairly traceable to [SB25-71] to establish standing" to proceed to the merits of its request for preliminary injunction. *Pharm. Rsch. & Manufacturers of Am.*, 2026 WL 763970, at *3. Although that analysis was limited to PhRMA's separate request for a preliminary injunction and did not address associational standing, the claims for relief brought forth in PhRMA's complaint and motion for preliminary injunction similarly address its members' economic injury. To be sure, PhRMA does not provide member-specific details about its alleged injury—such as the number of members that have been injured, projected economic losses, and so forth. However, PhRMA does explain that its members individually engaged in conduct that SB25-71 now proscribes. To this Court, such allegations are sufficient to demonstrate at least one of PhRMA's members suffered injury fairly traceable to SB25-71 to establish associational standing.

### B. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

Because PhRMA has associational standing to bring this action, the Court must next determine whether PhRMA has failed to state a claim under Fed. R. Civ. P. 12(b)(6).

#### 1. PhRMA's Preemption Claim

PhRMA's first claim seeks declaratory and injunctive relief on the grounds of federal preemption. Defendants argue that PhRMA has failed to state a plausible

preemption claim under both the field and conflict preemption theories. First, Defendants contend PhRMA's field preemption claim fails, because "[Section] 340B lacks express preemption language" and Congress did not intend for Section 340B to preempt the field. ECF No. 41 at 12-15. Second, Defendants assert that "SB25-71 *works with* 340B to provide more comprehensive services and reach more eligible patients," which directly negates PhRMA's conflict preemption claim. *Id.* at 15-20.

In its Order denying PhRMA's request for preliminary injunction, the Court analyzed PhRMA's field preemption and conflict preemption arguments and concluded that both were unlikely to succeed on the merits. *Pharm. Rsch. & Manufacturers of Am.*, 2026 WL 763970, at *4-*8. With respect to field preemption, the Court followed the Third and Eighth Circuit's analysis in determining that Section 340B "is silent about delivery and distribution of pharmaceuticals to patients." *Id.* at *5 (quoting *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, 1142 (8th Cir. 2024)). The Court agreed with the majority of other courts that have found Congress did not intend for Section 340B to preempt the field. *Id.* (collecting cases).

In its response to Defendants' motion to dismiss, PhRMA cites several paragraphs of its complaint that allegedly plead and explain how SB25-71 "impermissibly attempts to rewrite both the substantive and enforcement terms of a federal program." ECF No. 52 at 13-14 (citing ECF No. 1 ¶¶ 16-17, 48-55, 116-23, 131-32, 137-38, 151-55). "At the Rule 12(b)(6) stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1209-10

(10th Cir. 2025). However, the plaintiff bears the burden of presenting a complaint with enough factual details to suggest entitlement to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Here, PhRMA directs the Court to explanations in its complaint about Section 340B and SB25-71, but none of these statements persuade the Court to stray from its conclusion at the preliminary injunction stage. First, the Supreme Court has stated that there is a "presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Astrazeneca*, No. 25-CV-02685-PAB-STV, ECF No. 87 at 14 (citing *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 715 (1985); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). This case relates to state regulation of health matters and, therefore, the presumption against preemption applies. Second, the Court has already explained that the Supreme Court's decision in *Astra* "did not discuss or contemplate whether there was room in the 340B program itself for state supplementation." *Pharm. Rsch. & Manufacturers of Am.*, 2026 WL 763970, at *4. Numerous courts across the country have already determined that SB25-71 and similar laws of other states are not targeted or have the purpose of regulating Section 340B. *See Abbvie*, 2026 WL 1678085, at *9 (collecting cases); *see also Astrazeneca*, No. 25-CV-02685-PAB-STV, ECF No. 87 at 15 (finding that "AstraZeneca has not plausibly alleged that S.B. 71 is preempted by federal patent laws). Thus, this Court similarly finds that PhRMA has failed to state a field preemption claim upon which relief can be granted.

PhRMA's conflict preemption claim fares no better. PhRMA argues that SB25-71 "is directly aimed at, and parasitic to [Section] 340B," because the Colorado law "adds materially different and *undisclosed* obligations to the bargain manufacturers made when they signed the federal 340B agreement." ECF No. 52 at 19. PhRMA again cites to a string of paragraphs in its complaint. *Id.* (citing ECF No. 1 ¶¶ 16-17, 48-55, 116-23, 131-32, 137-38, 151-55). These allegations, that SB25-71's "imposition of additional obligations and a separate enforcement scheme is accordingly preempted as an impermissible intrusion into a federally dominated field," are similarly conclusory to those related to PhRMA's field preemption claims. ECF No. 1 ¶ 137.

The Court previously rejected PhRMA's conflict preemption argument, finding that (1) the SB25-71 complements Section 340B by helping "accomplish Section 340B's mission to help healthcare providers reach more eligible patients and provide more comprehensive services"; (2) SB25-71's claims-data restriction, which does not permit manufacturers to require claims data, does not conflict with Section 340B's audit requirements; and (3) SB25-71 creates enforcement authority for SB25-71 violations, not Section 340B violations. *Pharm. Rsch. & Manufacturers of Am.*, 2026 WL 763970, at *6-*8. These findings are also relevant here. PhRMA has failed to allege facts that actually describe a conflict, because SB25-71 does not conflict with Section 340B.

In his review of a similar motion to dismiss, Judge Martinez determined that (1) SB25-71 does not conflict with Section 340B's pricing regulation, *AbbVie*, 026 WL 1678085, at *7-*8 (collecting cases); (2) the claims restriction of SB25-71 "carves out an express exception to its claims-data prohibition that permits manufacturers to obtain data

related to audits conducted pursuant to [federal] procedures," *id.* at *6; and (3) the enforcement scheme of SB25-71 does not overlap with that of Section 340B, *id.* at *5-*6. Judge Martinez ultimately concluded that AbbVie failed to plausibly allege a conflict preemption claim. *Id.* at *7. Judge Brimmer came to the same conclusion. *Astrazeneca*, No. 25-CV-02685-PAB-STV, ECF No. 87 at 15-21 (finding that SB25-71 "does not regulate price," SB25-71's "enforcement scheme does not impact enforcement of Section 340B," and SB25-71's "claims-data restriction would not prevent AstraZeneca from conducting audits"). For these same reasons, PhRMA also fails to allege its conflict preemption claim.

Accordingly, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is granted with respect to PhRMA's first claim.

**2. PhRMA's Extraterritoriality Claim**

Finally, Defendants argue that PhRMA has failed to allege its extraterritoriality claim that SB25-71 violates the constitutional principle that "no state can regulate conduct outside its boundaries." ECF No. 52 at 27. Indeed, "[t]he Constitution vests Congress with the power to 'regulate Commerce . . . among the several States.'" *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023) (quoting Art. I, § 8, cl. 3.). Under the dormant Commerce Clause, the extraterritoriality doctrine "forbid[s] enforcement of state laws that have the practical effect of controlling commerce outside the State, even when those laws do not purposely discriminate against out-of-state economic interests." *Id.* at 371 (citation omitted). *National Pork Producers* rejected an "almost *per se*" dormant Commerce Clause rule "against laws that have the 'practical effect' of 'controlling' extraterritorial commerce

that would case a shadow over laws long understood to represent valid exercises of the States' constitutionally reserved powers." *Id.* at 375. The Court therefore considers whether SB25-71 discriminates against interstate commerce, falls within the discriminatory price-control precedents discussed in *National Pork Producers*, or otherwise presents a cognizable claim under *Pike*, which looks at the state "law's practical effects may also disclose the presence of a discriminatory purpose." *Id.* at 377.

PhRMA contends SB25-71 violates the extraterritoriality doctrine, relying on *Ass'n for Accessible Medicines v. Ellison*, 140 F.4th 957 (8th Cir. 2025). This Court is not bound by the decisions of the Eighth Circuit. Even so, the Court does not find that *Accessible Medicines* is persuasive here. In *Accessible Medicines*, the state law at issue prohibited drug manufacturers from "impos[ing], or caus[ing] to be imposed, an excessive price increase ... on the sale of any generic or off-patent drug sold, dispensed, or delivered to any consumer in the state." *Id.* at 959 (quoting Minn. Stat. § 62J.842 subd. 1.). The state statute then defined an "excessive price increase" as "a price increase that exceeds a certain percentage over the wholesale acquisition cost or that exceeds $30 for a 30-day supply of the drug." *Id.* The Eighth Circuit reasoned that, because "a Colorado manufacturer would be penalized if it sold drugs to a New Jersey distributor at prices above those proscribed by the Act and those drugs ended up in Minnesota," the state law had the effect of regulating the price of out-of-state transactions. *Id.* at 960-61.

The circumstances here are different. SB25-71 does not itself set prices and thus cannot have an impermissible extraterritorial effect of controlling prices. SB25-71 merely prohibits a manufacturer from restricting delivery of a Section 340B drug to a contracted

pharmacy. *See* Colo. Rev. Stat. § 6-29-105(1)(a). PhRMA's complaint is devoid of factual allegations that SB25-71 sets the price of drugs or regulates out-of-state transactions. Instead, PhRMA conclusively states that SB25-71 "regulates conduct occurring wholly beyond the borders of Colorado," because a Colorado covered entity could receive a Section 340B price on a drug from an out-of-state distributor. ECF No. 1 ¶¶ 167-70. Defendants explain that SB25-71 "simply requires that same price that manufacturers already are required to offer as part of the 340B program be extended regardless of delivery location." ECF No. 41 at 23. In other words, Section 340B establishes the price applicable to qualifying covered entity purchases but does not itself prescribe every permissible delivery location. SB25-71 fills that gap by separately prohibiting specified delivery restrictions. This additional state obligation does not conflict with federal law or regulates transactions lacking a sufficient Colorado nexus. Thus, the Court finds that PhRMA has failed to plausibly allege an extraterritoriality claim.

## IV. CONCLUSION

For the reasons stated herein, PhRMA's objection to the Recommendation, ECF No. 76, is **OVERRULED** and the Recommendation, ECF No. 72, is **ACCEPTED AND ADOPTED** on alternative grounds supported in the record. *United States v. Winningham,* 140 F.3d 1328, 1332 (10th Cir.2013) ("[W]e may **affirm** the district court on a wholly different basis so long as our decision finds support in the record.").

It is FURTHER ORDERED that Defendants' Motion to Dismiss, ECF No. 41, is **GRANTED**, and PhRMA's claims are **DISMISSED WITH PREJUDICE**.[4] Accordingly, the Clerk of the Court is directed to close this case.

DATED: September 1, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge

[4] A district court may dismiss claims without granting leave to amend "when it would be futile to allow the plaintiff an opportunity to amend his complaint." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The Court finds that PhRMA could not allege additional facts that would cure the deficiencies identified in this Order. Therefore, the Court will dismiss PhRMA's claims for relief with prejudice, as Judge Martinez and Judge Brimmer did with analogous claims. *See Abbvie, Inc.*, 2026 WL 1678085, at *13; *Astrazeneca*, No. 25-CV-02685-PAB-STV, ECF No. 87 at 28.